**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

THE UNITED STATES OF AMERICA,

        Plaintiff,　　　　　　　　　　Criminal No. 13-20443

v.　　　　　　　　　　　　　　　　Hon. Denise Page Hood

THADDEUS LEWIS McMICHAEL,

        Defendant.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorneys, United States Attorney Barbara L. McQuade and Assistant United States Attorney Sara D. Woodward, respectfully submits this sentencing memorandum. For the reasons stated below, the government recommends a 97-month prison sentence.

**I.　　PROCEDURAL HISTORY**

On July 18, 2013, Defendant entered a guilty plea to Count One of the Information, which charged receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2). The parties' Rule 11 Plea Agreement anticipated a sentencing guideline range of 97-121 months, based on a total offense level of 30 and a criminal history category of I. The Probation Department has calculated the same guideline range. (PSR ¶¶ 72, 73.)

1

II.     STATEMENT OF FACTS

In June 2011, the FBI learned that a Facebook user, MADTHAD08, was actively discussing child pornography on Facebook.com. The FBI initiated an investigation, and discovered that MADTHAD08 had posted numerous comments about downloading, viewing, and masturbating to child pornography. MADTHAD08's statements also included fantasies about sexually abusing children. MADTHAD08 wrote that children wanted to be sexually abused, that "7 year old girls . . . sucking dick so sexy," and fantasized about adopting a young girl to sexually abuse. (PSR ¶ 15.) Examples of Defendant's disturbing online comments are contained in the PSR in paragraph 15. Finally, MADTHAD08 also stated that his USB drive contained child pornography along with his resume: "HOLY FU*K! I went to the liberby [sic] today to send some resamays [sic] out and left my usb drive pluged [sic] in a computer with all cp, my resamay [sic] along with my name and address on it for about 30 min. I can only thank kami-sama that nobody looked through it." (PSR ¶ 15, p. 6.)

On February 17, 2012, a search warrant was executed at Defendant's home in Southfield, Michigan. Defendant was present at the time of the search, and admitted that the Facebook profile MADTHAD08 belonged to him. When asked about his postings regarding child pornography and the sexual abuse of children, Defendant claimed that all of the comments were "jokes." Defendant refused to

2

answer questions about child pornography. Defendant's father was also present at the search, and told the FBI that his son had obtained a new computer approximately one month ago. This computer and other electronic evidence were seized during the search.

A forensic review of Defendant's USB drive recovered 530 images and 6 videos of child pornography. One photograph depicted bondage, and another image was actually a collage of 10 images, each depicting the bondage and sexual abuse of a young child. The child pornographic material possessed by Defendant included images of very young children (infants and toddlers) being sexually abused. The material also included penetration and other sex acts between adults and children. Finally, Defendant's USB drive also included a copy of his resume.

On March 18, 2013, Defendant was interviewed by federal agents in connection with a polygraph examination. Defendant was asked two questions: 1) Have you ever had sexual contact with a child; 2) Have you ever had inappropriate contact with a child? Defendant answered "no" to both questions, but the polygraph examiner detected deception, and concluded that Defendant had failed the examination. After the examination, Defendant admitted that he visited the store Justice at the mall to watch young girls and that he collected Justice catalogs. He also admitted that he once filmed a short video of his toddler-aged cousin. The young girl was wearing clothes, and Defendant pretended to be "pedo-bear" and

made motions with his hands like he was trying to grab her. Defendant further admitted that he had discussed pedophilia online with other internet users. Defendant admitted that he had been masturbating while viewing child pornography since 2011.

### III. SENTENCING GUIDELINES CALCULATION AND RELEVANT 3553(a)a FACTORS

18 U.S.C. § 3553(a) provides the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. The most relevant factors to Defendant's case are evaluated below.

**A. The Sentencing Guidelines Range**

Although advisory, the Sentencing Guidelines remain an important factor under Section 3553(a) when determining an appropriate sentence. As the Supreme Court noted in *United States v. Rita*, 551 U.S. 338, 345 (2007), "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of

sentences that might achieve § 3553(a)'s objectives." The applicable guideline range for Defendant is 97-121 months. This is the appropriate starting point from which to consider Defendant's sentence.

### B. Nature and Circumstances of the Offense, and the History and Characteristics of the Offender, 18 U.S.C. § 3553(a)(1)

Defendant knowingly downloaded and viewed child pornography for at least a year. Defendant made statements on Facebook.com about the sexual abuse of children. Defendant's online statements provide insight into his sexual preferences, and make it clear that Defendant has a strong sexual interest in young girls.

### C. Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment, 18 U.S.C. § 3553(a)(2)(A)

The seriousness of this offense cannot be overstated, and mandates that the Court impose a guidelines sentence. Numerous courts have emphatically expressed the wretched consequences of child pornography. The Sixth Circuit has stated that "child pornography is, without qualification, a serious crime." *United States v. Robinson*, 669 F.3d 767, 776 (6th Cir. 2012). In *United States v. Bistline*, the Sixth Court explained:

> Knowing possession of child pornography . . . is not a crime that happens to a defendant. It is not a crime of inadvertence, of pop-up screens and viruses that incriminate an innocent person. Possession of child pornography instead becomes a crime when a defendant knowingly acquires the images—in this case, affirmatively, deliberately, and repeatedly, hundreds of times over, in a period exceeding year.

5

*United States v. Bistline*, 665 F.3d 758, 765 (6th Cir. 2012.) The Third Circuit has recognized that child pornography involves the horrendous abuse of children:

> Children are exploited, molested, and raped for prurient pleasure of [Defendant] and others who support suppliers of child pornography. These small victims may rank as 'no one else' in [Defendant]'s mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence is are far too real. There is nothing 'casual' or theoretical about the scares they will bear from being abused for [Defendant]'s advantage.

*United States v. Goff*, 501 F.3d 250, 258-59 (3d Cir. 2007).

The images and videos that Defendant received and possessed depicted the sexual exploitation and abuse of children. Some of the children in the images and videos are extremely young; some depict the lascivious exhibition of children's genitals; some feature the vaginal penetration of a young girl. A more accurate term for "child pornography" may well be to call the photographs what they really are: the permanent, digital recording of the sexual abuse of a child. "Child pornography harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008). Possessing child pornography is not an activity that society is prepared to tolerate. Congress has expressed its belief that receiving child pornography is repugnant and unacceptable, warranting severe punishment. *See, e.g., United States v. Duhon*, 440 F.3d 711, 719 (5th Cir. 2006) ("[C]hild pornography is not a victimless crime. A child somewhere was used to

produce the images downloaded . . . in large part, because individuals . . . exist to download the images.").

The children depicted in the images and videos possessed by Defendant are victims of sexual abuse, and in some cases, of rape and torture. Those children were first victimized by their abusers, but the online trading of the images and videos depicting this abuse continue to cause daily trauma to the victims. Several of the victims depicted in the known series possessed and traded by Defendant have submitted victim impact statements, which have been provided to the Court by the Probation Department. (PSR ¶ 15.) In their statements, the victims describe the pain that directly results from the online trading and possession of their images. They describe how the knowledge that their images are being traded impacts their lives daily, causes them fear and pain, and inhibits their ability to live normal lives.

The victim of the "Cindy" series explains:

> Being sexually abused is something you never forget, no matter how hard you try. But when you have photographs of your abuse on the internet, presently being viewed by others, it makes it even more impossible to keep it in your past and move on from it. It is like the abuse is still happening. In those pictures of me, there is a girl, trapped there, saying, "please rescue me." And instead of seeing a girl being used and abused in that picture or pictures, these men decide they would rather victimize me by using the pictures for their own sick sexual desires, and trade them with others so they can do the same.

(Victim Impact Statement from "Cindy," p.1.)

The mother of the victim in the Jan_Feb series states:

> [M]y daughter was abused repeatedly to produce images for the purpose of being traded/shared over the internet. Without a market to receive and trade those images, without the encouragement of those who wanted to acquire the images, I truly believe this abuse would not have happened.
>
> All those who trade these images and thereby create the demand for lurid and violent depictions of children are participants in the exploitation of my daughter. Each traded picture that placed a value on inventiveness, novelty, or cruelty played a role in egging on the abuse to even more vile acts.
>
> The pictures of my daughter were "made for trade" – her abuser adapted to serve his market—whatever his audience was looking to acquire, that's what happened to her. Torture, degradation, pain & suffering—whatever was being traded for and downloaded directly influenced what happened to her—and what is still happening to other children like her.
>
> ….
>
> I can find no words to express the fury I feel at those who participate in this evil, or my scorn for any attempt to minimize the responsibility by feeble claims that the crime was "victim-less." My daughter is a real person. She was horribly victimized to provide this source of "entertainment." She is exploited anew each and every time an image of her suffering is copied, traded, or sold. While the crime is clearly conscienceless, it is hardly "victim-less."
>
> I asked my daughter what she most wanted to ask of the judge. Her request: "Please don't let them pretend no-one's getting hurt!"

(Victim Impact Statement from "Jan_Feb" series, p. 1, 4.)

Similarly, a parent of the victim in the "Sara" series states:

> The fact that someone says to view the images is a "non-victim" incident is absurd. The individuals who view these images are only feeding the perpetrator to continue creating and exchanging such images. Every time her image is viewed, she is a victim all over again.

(Victim Impact Statement from "Sara" series.)

The Supreme Court and courts throughout the country have recognized that collectors of child pornography create a market for the abuse of children. *Osborne v. Ohio*, 495 U.S. 103, 111 (1990). Although Defendant did not produce any images himself, "the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials. . . ." *In re Amy Unknown*, 636 F.3d 190, 201, n. 12 (5th Cir. 2011) (*citing United States v. Norris*, 159 F.3d 926 (5th Cir. 1998), rejecting the argument that possessors of child pornography are only an "indirect or secondary" cause of the victim's harm). Downloading and viewing images of child pornography as a "consumer" creates a demand for the proliferation and production of child pornography. Through his actions, Defendant played a role in the normalization and proliferation of child pornography. He directly impacted the market for child pornography.

The Sixth Circuit recently reaffirmed this overriding goal. When discussing the importance of general deterrence and protecting the public, the court explained that, even in cases that only involve the possession of child pornography, the

9

sentencing factors should be focused on the market for child pornography. *United States v. Robinson*, 669 F.3d 767 (6th Cir 2012) (reversing a one-day sentence imposed for possession of child pornography). The court, quoting the Seventh Circuit, stated:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded . . . The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater customer demand for it and so the more will be produced.

*Id*. at 777 (quoting *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007)).

Tragically, as the market for child pornography has grown in recent years, the images and videos that are being produced to satisfy the unending demand for the product have become more graphic, more violent, and more depraved. The images and videos that are distributed are not simply old images being traded over and over again; indeed, the number of images that are tied to known victims (as identified by the National Center for Missing and Exploited Children) represent only a fraction of child pornography in circulation. New child victims are abused in order to satisfy the insatiable demand that individuals, like Defendant, have for

10

the material, and to satisfy a market that is no longer content with the prior degree of abuse.

There is no question that possessing child pornography is a serious offense. *Robinson*, 669 F.3d at 776. Congress also requires that the sentence provide just punishment. *United States v. Bistline*, 665 F.3d 758, 764 (6th Cir. 2012) ("Congress's long and repeated involvement in raising the offense levels for § 2G2.2 makes clear that the grounds of its action were not only empirical, but retributive – that they included not only deterrence, but punishment.").

Defendant made a deliberate choice to access and download images and videos depicting the sexual abuse of children. Specifically, Defendant's receipt of these images and videos caused pain, humiliation and harm to the children depicted. When Defendant downloaded these files, he encouraged distributors of child pornography throughout the world to continue to share these horrendous images of children. Inevitably, he encouraged likeminded individuals to create or distribute new images and videos online.

**D. Deterrence; 18 U.S.C. § 3553(a)(2)(B)**

The above considerations impact another § 3553(a) factor – the need to deter such conduct in the future. Sentencing in the federal system has long contemplated the ability to provide both specific and general deterrence. *United States v. Phinazee*, 515 F.3d 511 (6th Cir. 2008); *United States v. Blackwell*, 459 F.3d 739,

11

774 (6th Cir. 2006). A 97-month sentence is necessary so that Defendant and others will understand the consequences of child pornography offenses, and deter him and others from engaging in this conduct in the future.

Indeed, the Sixth Circuit has explained that deterrence is particularly important when dealing with child pornography cases. This is because most child pornography cases, just like this case, take place in private, making them easy to commit and very difficult to detect. Under such circumstances, deterrence is important to combat the normalization that occurs when offenders "may think that because they are on the Internet in their home that they are doing something that is innocent." *United States v. Kirchholf*, 505 F.3d 409, 415 (6th Cir. 2007). Moreover, as the Sixth Circuit explained, "general deterrence is crucial in the child pornography context." *Robinson*, 669 F.3d at 777.

### E. Avoiding unwarranted sentence disparities; 18 U.S.C. 3553(a)(6)

The Court has an obligation to ensure minimal sentence disparities among defendants with similar records that have been found guilty of similar conduct. As this Court is no doubt aware, it is not uncommon for defendants convicted of crimes related to child pornography to have little or no prior criminal history. It is also not uncommon for such defendants to have strong employment histories. The number of images and the types of images possessed by Defendant are also fairly

common in these types of cases. As a result, a 97-month sentence is appropriate, and will avoid unwarranted sentence disparities.

IV. **CONCLUSION**

For the reasons stated above, a sentence of 97 months is the appropriate sentence. A sentence at the bottom of the guideline range is sufficient to take into consideration the nature of Defendant's conduct, his history and characteristics, the need for the sentence imposed to promote just punishment and promote respect for the law, and the need for the sentence to avoid unwarranted sentencing disputes. The Government urges the Court to impose a sentence of 97 months.

Respectfully Submitted,

BARBARA McQUADE
United States Attorney

*s/Sara D. Woodward*
SARA D. WOODWARD
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9810
sara.woodward@usdoj.gov

Date: January 10, 2014

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2014, I filed the foregoing document with the Clerk of the Court. I further certify that on January 10, 2014, I provided a copy of this sentencing memorandum to Christine L. Connolly, U.S. Probation Officer.

                              *s/Sara D. Woodward*
                              SARA D. WOODWARD
                              Assistant United States Attorney
                              211 West Fort Street, Suite 2001
                              Detroit, Michigan  48226-3211
                              (313) 226-9810
                              sara.woodward@usdoj.gov

Date: January 10, 2014